UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMANTHA K. WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00763-RLY-TAB |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT FOR REVIEW**

Plaintiff Samantha K. Walton applied for disability insurance benefits in May 2013, alleging disability beginning in September 2011. Her claim was denied initially and upon reconsideration. Walton, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge on June 4, 2015. The ALJ issued his decision on September 15, 2015, finding Walton not disabled. The Magistrate Judge finds the decision should be remanded because the ALJ erred in not considering a highly relevant occupational therapy evaluation.

**I. Background**

At step one, the ALJ found that Walton has not engaged in substantial gainful activity since the alleged onset date of September 8, 2011. [Filing No. 8-2 at ECF p. 14.] At step two, he determined that Walton has severe impairments: lupus and a history of seizure disorder. [*Id.*] The ALJ also found that she has non-severe impairments of depression, obesity, and hypertension. [*Id.* at 14–15.] At step three, the ALJ decided that Walton does not have any impairment or combination of impairments that meets or equals a listing. [*Id.* at 15.]

Next, the ALJ determined that Walton "has the residual functional capacity to perform a full range of work at all exertional levels," except that she "can never climb ramps or stairs, balance, stoop, kneel, crouch, and crawl" and she "must avoid even a moderate exposure to hazards." [Filing No. 8-2 at ECF p. 15.] At step four, based on this RFC finding, the ALJ found that Walton could not perform any of her past work. [Id. at ECF p. 18.] Then at step five, given Walton's age, education, and work experience, as well as testimony from a vocational expert, the ALJ determined that Walton was able to perform work that exists in significant numbers in the national economy such as ticket seller, linen room attendant, and assembler. [Id. at 19.] He concluded that she was not disabled under the Social Security Act. [Id.] The Appeals Council denied review and this appeal followed.

## II. Discussion

The Court must uphold the ALJ's decision if it is supported by substantial evidence and applies the correct legal standard. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

Walton raises several issues on appeal, but the first is decisive, so it is the only one discussed at length in this decision. Walton argues that the ALJ erred in failing to consider an occupational therapist's functional capacity evaluation, which assessed her with an ability to work at the light level.[1] On June 1, 2015, the occupational therapist performed a comprehensive evaluation, which included testing Walton's performance in numerous physical tasks. Walton reported that the day of the evaluation was "a better day" for her pain-wise, although she described "burning, stabbing and itching" sensations in both hands and ankles. [Filing No. 8-13

---

[1] Walton asserts that had the ALJ considered the occupational therapy evaluation, he may have given greater weight to her treating rheumatologist's opinion as to her functional capacity. Walton also argues that the ALJ erred in assessing her RFC and that his hypothetical question to the vocational expert, which was based on his RFC finding, was also flawed.

2

at ECF p. 58.] She said that her prednisone dosage had been increased a few days before because she was experiencing "bad flare ups." [*Id.*]

During the evaluation, the therapist observed, among other things, that Walton did not demonstrate "the positional tolerances required to complete any material handling task at a constant frequency" [Filing No. 8-13 at ECF p. 64] and "demonstrated the ability to engage in lifts of no more than 10# . . . at a frequency of up to 50% of a typical work day." [*Id.*] According to the therapist, Walton could stand for approximately 20 minutes before needing a break and could sit for 30 minutes. [*Id.* at ECF p. 65.] The therapist opined that Walton's physical abilities "will be affected by her symptoms of joint pain and edema on any given day" [*id.*] and "during a flare up, her abilities would be hindered significantly." [*Id.*] In particular, Walton's ability to engage in tasks requiring sustained grip or manipulation would be affected. [*Id.*] In summary, the therapist wrote that Walton's "tolerance to material handling tasks/strenuous activities is quite limited" [Filing No. 8-13 at ECF p. 66] and "[s]he would have difficulty keeping pace in a competitive work environment, especially one that required sustained time spent on her feet . . . or a job that required lifting/handling more than negligible amount of weight at more than a frequent occurrence." [*Id.*] The therapist indicated that Walton should never climb or crawl [*id.* at ECF p. 65] and recommended that she only work in a controlled-temperature environment. [*Id.* at ECF p. 66.]

The Commissioner does not dispute that the ALJ's decision reflects no consideration of this occupational therapy evaluation. Instead, she maintains that the ALJ was not required to evaluate every piece of evidence and asserts that it was clear he did consider the evaluation. But even if the ALJ erred in failing to explicitly weigh the occupational therapist's opinion, according to the Commissioner, such error was harmless.

3

The Magistrate Judge agrees that the ALJ erred in not considering the occupational therapy evaluation. And since the Magistrate Judge is not convinced that the ALJ would reach the same decision if he had considered the evaluation, a remand is warranted.

The Commissioner argues that opinions from non-acceptable medical sources, such as occupational therapists, are not entitled to controlling weight. True enough. *See* 20 C.F.R. §404.1527(c) (stating that a treating source's medical opinion may be given controlling weight under certain circumstances).[2] But Walton does not claim that the occupational therapist's evaluation should be given controlling weight. Rather, she asserts that it is highly relevant medical evidence and should be given some consideration, yet the ALJ's decision fails to show that it was given any consideration whatsoever.

Since the ALJ mentioned the occupational therapy evaluation at the hearing and the evaluation was included on an exhibit list attached to the ALJ's decision, the Commissioner suggests that the ALJ considered the evaluation. But neither of these facts reasonably suggests that the ALJ actually took the evaluation into account. To conclude that the ALJ did consider the evaluation would be sheer speculation. The functional capacity evaluation is an important piece of detailed evidence bearing on Walton's disability claim. Thus, it is highly relevant evidence and the ALJ was required to consider it. *See, e.g.*, *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (the ALJ must "weigh the relevant evidence"); *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (stating "we cannot uphold an administrative decision that fails to mention highly pertinent evidence"). And as the Commissioner acknowledges, an ALJ "generally should explain the weight given to opinions" from medical sources "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's]

---

[2] This regulation is applicable to claims filed before March 27, 2017, such as Walton's.

reasoning." 20 C.F.R. § 404.1527(f)(2). With respect to the occupational therapist's opinion, the ALJ's decision does neither of these. Thus, the ALJ erred in failing to consider the occupational therapy evaluation.

This error raises another problem with the ALJ's decision. The opinion of treating rheumatologist Dr. Tehniat Haider as to Walton's functional capacity may be based, at least in part, on the occupational therapy evaluation. Dr. Haider assessed Walton's functional capacity the day after the occupational therapy evaluation, and it is reasonable to infer that the physician had access to the therapist's report. The therapist's assessment of Walton's functional capacity and Dr. Haider's assessment are supportive of each other; if accepted, they lead to an RFC finding that is considerably more restrictive than that found by the ALJ. However, there is no indication that the ALJ considered the consistency between their opinions, which is a factor bearing on the weight to be given such evidence. *See, e.g.,* 20 C.F.R. § 404.1527(c)(4). Furthermore, the ALJ discounted Dr. Haider's opinion regarding Walton's functional capacity because he found that the opinion contradicts her treatment notes. The fact that the occupational therapy evaluation tends to substantiate Dr. Haider's opinion may cause a reasonable adjudicator to give more weight to that opinion.

The Commissioner suggests that Walton does not challenge the weight given to Dr. Haider's opinion or those of the state agency physicians. Though Walton has not presented a separate issue challenging the weight given to these opinions, she contends that Dr. Haider's opinion was not given "proper credit" [Filing No. 10 at ECF p. 4] and is "in line with the findings of the occupational therapy evaluation." [*Id.* at 22.] Reconsideration of the state agency physicians' opinions may naturally follow from consideration of the occupational therapy

5

evaluation and further consideration of Dr. Haider's opinion. Thus, the Magistrate Judge does not find that Walton waived any argument related to the weighing of the medical opinions.

Having found that the ALJ erred in failing to consider the occupational therapy evaluation, the question is whether the case should be remanded. The Commissioner maintains that any such error was harmless. An error is harmless where the reviewing court is "convinced" that the ALJ would reach the same result on remand. *See, e.g., McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (once the court concludes the ALJ erred, the issue is whether the court can say "with great confidence what the ALJ would do on remand"). As noted, the occupational therapist's evaluation is highly relevant evidence, supports Dr. Haider's functional capacity assessment as well as Walton's subjective claims, and could very well affect the ALJ's weighing of Dr. Haider's opinions and other evidence. Thus, the Magistrate Judge is not convinced that the ALJ will reach the same conclusion on remand and finds that a remand is appropriate.

Other significant errors in the ALJ's decision should be addressed on remand. First, the ALJ did not assess whether Walton has good and bad days. The RFC must include a claimant's limitations on her worst days. *See Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Walton testified that she suffers from flare ups two to three weeks per month and the flares last 24 hours. [Filing No. 8-2 at ECF pp. 35–36.] She said that during a flare up, her whole body is sore, her joints are really inflamed, red and burning; it is hard for her to walk; and she cannot get out of bed. [*Id.* at ECF p. 35.] Her husband also reported that on a bad day, Walton cannot get out of bed. [Filing No. 8-6 at ECF p. 23.] Dr. Haider opined that Walton's lupus and migraines were likely to cause "good days" and "bad days" and estimated she would be absent from work more than four days per month. [Filing No.

6

8-13 at ECF p. 55.] The ALJ should address whether Walton has good and bad days, how often, and determine how they affect her ability to work.

Second, the ALJ did not address Walton's daily fatigue or migraine headaches, the latter of which she testified occur two or three times per week and can be so severe that they interfere with her daily activities. [*Id.* at ECF pp. 35, 38.] And Dr. Haider indicated that Walton suffers from fatigue and migraines for which she has been treating Walton. [*See, e.g.*, *id.* at ECF pp. 45, 52.] The ALJ should address Walton's fatigue and migraines and their effect on her ability to maintain steady employment.

Furthermore, the basis for the ALJ's RFC finding is unclear. The Commissioner suggests that the RFC finding is based on the state agency reviewers' opinions. [*See* Filing No. 19 at ECF p. 3 (asserting the ALJ "adopted" the reviewing physicians' opinions).] The ALJ's RFC finding only incorporates postural and environmental limitations, similar to the reviewing physician's opinions. Nonetheless, the conclusion that Walton is capable of performing work at all exertional levels, even "very heavy work," which requires lifting objects of 100 pounds or more and frequent lifting and carrying of object weighing 50 pounds or more, 20 C.F.R. § 404.1567(e), and with only a few postural and environmental limitations, has no basis in the record.

The Commissioner argues that even though the ALJ found Walton capable of performing work at all exertional levels, the vocational expert identified jobs only at the light exertional level. But the vocational expert identified jobs such as ticket seller and assembler that seem to require extensive use of one's hands and, according to the occupational therapist, material handling presents a significant problem for Walton. The therapist also thought Walton would have difficulty maintaining pace in a competitive work environment. Proper consideration of the

7

entire record, including the occupational therapy evaluation and Dr. Haider's opinion, could lead a reasonable adjudicator to find that Walton is not capable of performing even light work. And whether Walton is capable of performing any work at any exertional level must be reevaluated.

Finally, the reviewing physicians' opinions of Walton's limitations are based on her seizure disorder; the opinions do not grapple with the evidence of her lupus, migraines, and fatigue and resulting limitations. [*See* Filing No. 8-3 at ECF pp. 2–11, 13–22.] Although the ALJ did find that Walton suffers from lupus, it appears that he attributed no functional limitations to this chronic disease, which affects Walton's joints, causes pain in her hands, thumbs, and ankles, and causes fatigue. [*See id.* at ECF pp. 45, 52.]

The Magistrate Judge finds that the ALJ erred in failing to consider the occupational therapy evaluation. Consideration of the evaluation may affect the weighing of Dr. Haider's opinion and other record evidence. The ALJ also erred in the ways discussed above. Further consideration of the evidence may affect the ALJ's RFC finding, the hypothetical question posed to the vocational expert, and the ultimate determination of whether Walton is disabled under the Social Security Act. Therefore, the Magistrate Judge finds that a remand is appropriate.

**IV. Conclusion**

As discussed, this case should be remanded to allow the ALJ to consider the occupational therapy evaluation and reconsider, as appropriate, other record evidence and make a proper disability determination. The Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal [Filing No. 10] and remand this action pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within

8

fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 11/14/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Electronic Distribution to All Counsel of Record